IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| LINDA A. POHLMAN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-3447-CV-S-ODS |
| | ) | |
| JOANNE B. BARNHART, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her application for disability benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born in March 1953 and completed the tenth grade. In 1981 she was involved in a serious motor vehicle accident ("MVA") and suffered fractures to her back, pelvis, left leg, and skull. She lacks any memory of the two months following the accident, during which time she underwent surgeries (including the insertion of metal plates and rods to help repair the damage to her body). Plaintiff was unable to work until 1989 and since worked as a bakery worker, repair order clerk, and an order clerk.

In December 2000, Plaintiff fell on ice, injuring her left ankle. An x-ray showed a fracture to the left ankle joint in three places and Dr. John Huffman suggested that Plaintiff have surgery to repair the ankle. Plaintiff refused, citing the pain associated with surgery from her MVA. She was placed in a long-leg splint and given medication (Toradol and Percocet) to help alleviate the pain. R. at 143-145. Over the course of the next three

months, Plaintiff returned on several occasions for follow-up examinations with Dr. Huffman. The record contains progress notes from the subsequent four meetings (from January - April 2001) after her broken ankle and the notes reflect substantial improvement, including decreased tenderness in the ankle, no complaints on part of Plaintiff and overall control of her pain. R. at 146-148. Additionally, in March 2001, Plaintiff met with a physical therapist who noted that Plaintiff had progressed from a walker to a cane following her last appointment with Dr. Huffman and that her weight bearing had progressed from partial to full. R. at 151.

The record reflects no doctor visits by Plaintiff for a period of thirteen months. Plaintiff has alleged continual memory loss and confusion from brain damage following her MVA. In April of 2002, Plaintiff underwent a psychiatric review by an agency physician, who determined that Plaintiff had no medically determinable impairment. R. at 153-154. In January 2003, Plaintiff was seen by a psychologist, Dr. Michael Whetstone. Dr. Whetstone's neuropsychological assessment report summarizes that Plaintiff has mild weaknesses in attention and memory, as well as verbal fluency, which Dr. Whetstone opined may reflect significant improvement from a time closer to her MVA. R. at 186. He determined that, although Plaintiff has underlying anxiety, her current functioning levels are broadly within average ranges, which reflect no significant impairment in either cognition or short-term memory. R. at 186.

In June 2002 Plaintiff began to see Dr. Kim Hale, who, after her initial assessment, set out short-term and long-term physical therapy goals for Plaintiff to achieve. In August 2002, Dr. Hale's notes indicate that Plaintiff had met three out of the four short term goals and all five long term goals for her physical therapy. R. 163. Dr. Hale determined that Plaintiff showed functional improvement in strength and range of motion, but noted that Plaintiff's pain was still a factor in her functional mobility. R. at 157. In August 2002, Dr. Hale discharged Plaintiff from physical therapy and recommended that she continue with a home exercise program and follow-up with a physician as needed. R. at 157.

Plaintiff had three physical examinations, two in 2002 and one in 2003, by Dr. Kim Hale and Dr. Arthur Hale. The three exams conclude Plaintiff is physically limited due to

her back and shoulder pain. The physical examinations indicate that Plaintiff's strength is limited to the following: frequently lifting and/or carrying less than ten pounds (occasionally lifting less than ten pounds), standing and/or walking for 15 minutes, and sitting with usual breaks a total of one hour. The examinations reference Plaintiff's ability to push and/or pull to be limited due to the shoulder and back pain experienced due to repetition. R. at 172.

At the hearing, Plaintiff described herself as having continuous pain and occasional numbness (in varying degrees) in her left leg, back, shoulders, and hips, as well as trouble maintaining her balance while walking. Plaintiff described herself as having problems with depression since the day of her MVA. R. at 263-281.

The Administrative Law Judge ("ALJ") posed hypothetical questions to a Vocational Expert ("VE"). The VE identified Plaintiff's past relevant work as: bakery worker (Plaintiff performed as light work, but nationally classified as medium unskilled work), repair order clerk (Plaintiff performed as light work, but nationally classified as sedentary semi-skilled work), and order clerk (Plaintiff performed as sedentary and nationally classified as sedentary semi-skilled). R. at 301.

At Step Four of the sequential analysis, the ALJ asked the VE to assume a person of Plaintiff's age, education, and work history who could stand or walk two hours and sit for six hours in an eight hour day, could lift ten pounds occasionally and less than ten pounds frequently, who needed to avoid jobs with high levels of stress or high levels of concentration, and could pay attention sufficiently to perform only simple, routine, or repetitive tasks. R. at 302. In response to the ALJ's question, the VE testified such a person could return to his/her past relevant work as a repair order clerk.

At Step Five, the VE testified that for an individual of Plaintiff's age, education, past relevant work experience and residual functional capacity ("RFC") as determined, there are jobs that exist within the national economy, such as a "sticker" (which exists in the state of Missouri at the rate of 863; national economy at the rate of 76,000) and "table worker" (which exists in the state of Missouri at the rate of 846; national economy at the rate of 72,000). R. at 302-303.

The ALJ determined that, although Plaintiff would be unable to perform any of her past relevant work, she has the RFC to perform a significant range of sedentary work. The ALJ also found that there are a significant number of jobs in the national economy that Plaintiff could perform. The ultimate conclusion of the ALJ was that the Plaintiff was not under a "disability" on or before September 30, 2001, the date her insured status expired, and is not entitled to a period of disability or to Disability Insurance Benefits. R. at 23-27.

## II. DISCUSSION

Plaintiff appeals the Commissioner's decision claiming that reversal and remand are appropriate based on the following: (A) the ALJ erred in the determination of Plaintiff's RFC, (B) the ALJ failed to properly consider Plaintiff's credibility, specifically her subjective complaints of pain, and (C) the Appeals Council failed to acknowledge the ALJ's error and/or consider "new and material evidence" that, although generated subsequent to the date Plaintiff was last insured, references Plaintiff's injuries that have persisted from the time of her MVA.

Plaintiff's application for disability insurance benefits alleged she had been disabled since December 31, 1997 and her insured status expired on September 30, 2001. "When an individual is no longer insured for Title II disability purposes, we will only consider an individual's medical condition as of the date she was last insured." Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997). Therefore, Plaintiff must establish disability on or before September 30, 2001. For this reason, the Court concentrates its analysis on Plaintiff's medical records preceding that date.

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714

4

(8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

(A) RFC Determination

Plaintiff argues that the ALJ failed to properly determine Plaintiff's residual functional capacity. The Court disagrees; the ALJ fulfilled his obligation by posing questions to the VE, who testified that a hypothetical individual in Plaintiff's circumstances could perform work. Plaintiff has suggested that two of the three jobs that she held since her MVA in 1981 were with benevolent employers, therefore, suggesting that she was not doing the jobs as they are normally done. The Court agrees, but the VE adequately took into consideration the nature of the Plaintiff's past work as she described it. R. at 301. More importantly, Plaintiff's argument addresses step four of the analysis, and the ALJ found she satisfied this step when he held she could not perform her past relevant work. Although Plaintiff would not be able to return to her past relevant work, the VE's testimony demonstrates that Plaintiff would be capable of making a vocational transition to other work. The VE testified, and the ALJ properly found, that the Plaintiff could perform other work that exists in significant numbers in the national economy.

(B) Plaintiff's Credibility

Plaintiff next argues that the ALJ failed to give proper weight to her subjective complaints of pain. There is no doubt that Plaintiff experiences pain – however, pain, alone, does not justify an award of benefits. The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that she experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar standard for analyzing a claimant's

5

subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

The Court accepts Plaintiff's argument that her subjective complaints of pain cannot be discounted or ignored simply because they are not fully corroborated by objective medical evidence. However, Plaintiff's testimony is also contradicted by evidence in the record, including her own testimony that she used only aspirin, Naproxen, and other over-the-counter medications. Plaintiff did not receive a prescription pain reliever until she

6

broke her ankle in December 2000. R. at 285-286. Once Plaintiff ceased using that medication she did not take another prescription pain reliever until 2002. R. at 285-286. Lack of strong pain medication is inconsistent with subjective complaints of disabling pain. See Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994). Additionally, Plaintiff's testimony that she has "learned to deal with her pain pretty well" is further evidence which contradicts Plaintiff's claims of disabling pain. R. at 286. In addition, Plaintiff refused surgery designed to alleviate her ankle pain, citing her experience with previous surgery from her MVA and "how bad it hurt." R. at 272. Again, this is contradicted by Plaintiff's testimony that she did not take pain medications because she has a "pretty high pain tolerance." R. at 286. Moreover, Plaintiff's rejection of a surgical option demonstrates her ankle pain may not have been debilitating, as a person with debilitating pain would opt for surgery designed to alleviate it. There was no evidence submitted during the relevant time period by a physician which referenced Plaintiff's inability to perform work, even at a reduced capacity. Finally, Plaintiff testified that as far back as 2001 she worked in the garden for approximately an hour and a half at a time and traveled to Florida every year by car for vacation. R. at 289. These activities undermine Plaintiff's claims of debilitating pain, and an inability to stand, bend, sit or walk for long periods of time. The ALJ properly considered the factors demanded by Polaski in evaluating Plaintiff's subjective complaints of pain.

(C) Additional Medical Evidence

    Finally, Plaintiff argues that remand is required because additional medical evidence was submitted to the Appeals Council showing that Plaintiff is disabled. Plaintiff contends that the Appeals Council failed to acknowledge the ALJ's error and/or consider "new and material evidence" that, although generated subsequent to the date Plaintiff was last insured, references Plaintiff's injuries that have persisted from the time of her MVA in 1981 through 2001.

    When the Appeals Council considers new evidence and declines review, a reviewing court must consider that new evidence in determining whether the

Commissioner's decision is supported by substantial evidence. See Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994). A reviewing court does not evaluate the Council's decision not to review. Id. at 622. Instead, the court will factor in the new evidence and determine whether the ALJ's decision is still supported by substantial evidence. See Flynn v. Chater, 107 F.3d 617, 621-22 (8th Cir. 1997). The Court notes that new medical evidence presented by Plaintiff, although meant to show continued complaints of pain since Plaintiff's MVA in 1981, does not provide sufficient evidence to justify a remand of the ALJ's decision. The additional records submitted do not reference any new or unstated medical condition that has not already been established or considered in the ALJ's decision. Furthermore, the additional records do not specifically reference Plaintiff's mental, physical, or vocational restrictions during the relevant period. As stated before, Plaintiff must establish disability on or before September 30, 2001. The dearth of medical evidence presented, treatment sought, or use of prescription pain medications during the relevant period in which Plaintiff met the insured status supports the ALJ's conclusions that the Plaintiff was not under a "disability," as defined in the Social Security Act, on or before September 30, 2001.

### III. CONCLUSION

For these reasons, the Court affirms the Commissioner's final decision denying Plaintiff's application for benefits.

IT IS SO ORDERED.

DATE: June 21, 2005

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT